# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.:

THE PALMS OF PEMBROKE
CONDOMINIUM ASSOCIATION, INC.,
a Florida non-profit corporation,

      Plaintiff,

v.

GLENCOE INSURANCE, LTD.,
a foreign corporation, WESTCHESTER
SURPLUS LINES INSURANCE COMPANY,
a foreign corporation

      Defendant.

_____/

## COMPLAINT

Plaintiff, THE PALMS OF PEMBROKE CONDOMINIUM ASSOCIATION, INC., ("THE PALMS"), by and through undersigned counsel, hereby sues the Defendant, GLENCOE INSURANCE, LTD., ("GLENCOE"), a foreign corporation, and WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("WESTCHESTER"), a foreign corporation, and states as follows:

1.    This is an action wherein Plaintiff seeks damages in excess of $15,000.00, exclusive of interest and costs.

2.    Plaintiff, THE PALMS, is a Florida non-profit corporation duly authorized to conduct business in the State of Florida.  THE PALMS is the condominium association for the condominium buildings located at 351 Palm Circle, Pembroke Pines, Florida 33025, the insured property.

1

3.    Defendant, GLENCOE, is, upon information and belief, a foreign corporation duly authorized to conduct business in the State of Florida, and which does, in fact, issue policies of insurance in Broward County, Florida.

4.    Defendant, WESTCHESTER, is, upon information and belief, a foreign corporation duly authorized to conduct business in the State of Florida, and which does, in fact, issue policies of insurance in Broward County, Florida.

5.    GLENCOE issued a commercial property insurance policy to THE PALMS for the insured property bearing Policy # WD-10692-00 which insured the subject property at all relevant times herein. A copy of the subject policy is attached hereto as Exhibit "A." The named insured on the subject policy is GREC Conversion XVIII ("GREC"). THE PALMS became the named insured in November 2005, and GREC has assigned any and all rights under the subject policy pursuant to the assignment attached hereto as Exhibit "B."

6.    On or about October 24, 2005, Plaintiff sustained damage to the roofs of the subject condominium buildings at the insured property due to windstorm which, in turn, resulted in water damage to the interior of the subject buildings. These damages are covered under the subject policy.

7.    As a result of the loss, THE PALMS filed a claim with GLENCOE which was assigned Claim No.: WD 10692.

8.    On September 8, 2008, GLENCOE completed its initial investigation of the subject claim as evidenced by the correspondence attached hereto as Exhibit "C." GLENCOE found that the damages did not exceed the deductible, but THE PALMS disagreed with such decision. As a result, GLENCOE continued with its investigation.

9.    THE PALMS complied with and performed all conditions precedent under the subject

2

policy for the recovery of benefits or said conditions were waived by GLENCOE.

10.   GLENCOE has failed to pay any benefits due for the covered loss even though benefits are payable under the subject policy.

11.   GLENCOE's conduct has caused THE PALMS to retain the services of the undersigned attorney to represent it in this action, and GLENCOE is, therefore, also liable for reasonable attorney's fees pursuant to Fla. Stat. § 627.428 for such services.

## COUNT I - BREACH OF CONTRACT AS TO GLENCOE

12.   Plaintiff restates Paragraphs 1 through 11 as though fully set forth herein.

13.   GLENCOE, therefore, has breached the terms of the contract of insurance by failing to pay the monies which became due and owing to THE PALMS as a result of the covered loss.

14.   As a result of Glencoe's breach, THE PALMS has suffered damages in the amount of insurance benefits due and owing to it under the subject policy.

WHEREFORE, Plaintiff, THE PALMS OF PEMBROKE CONDOMINIUM ASSOCIATION, INC., demands judgment against Defendant, GLENCOE INSURANCE LTD., for (I) compensatory damages, (ii) pre-judgement interest, (iii) attorney's fees and costs pursuant to Fla. Stat. § 627.428, and (iv) such other relief as this Court deems just and proper.

## COUNT II
## DECLARATION OF RIGHT AS TO GLENCOE AND WESTCHESTER

15.   The Plaintiff restates paragraphs 1 through 11 as if set forth fully herein.

16.   WESTCHESTER issued a commercial property insurance policy to THE PALMS for the insured property which would cover any damages caused by Hurricane Wilma in excess of

3

the damages covered by the policy issued by GLENCOE for the subject property. THE PALMS does not have a copy of the policy and, as such, a copy of the policy will be filed with the court once it is obtained through discovery.

17.   GLENCOE has also taken the position that the coverage limit under the subject policy attached hereto as Exhibit "A" is $5,000,000.00. However, the subject policy lists the total insured value at $33,260,204.00. Based on the stated total insured value of $33,260,204.00, THE PALMS believes this to be the coverage limit for any and all damage to all of the buildings contained in the insured property. As a result, THE PALMS is unsure of its rights under the policy of insurance with GLENCOE and is in need of a present declaration of rights under the policy of insurance and Florida law.

18.   The damage to the condominium property as a result of the subject claim is in excess of $5,000,000.00. In the event that the coverage limit under the subject policy is determined to be $5,000,000.00, coverage for damages in excess of this amount would exist under the policy issued by WESTCHESTER. As such, THE PALMS is also unsure of its rights under the policy issued by WESTCHESTER given GLENCOE's position as to the limits of coverage under its policy.

19.   Plaintiff's right to recovery under the insurance policies issued by both GLENCOE and WESTCHESTER is dependent upon this Honorable Court's finding of facts and application of Florida law.

20.   Both Defendants' interests in this declaration of rights are actual, present, adverse and antagonistic in fact and/or law to Plaintiff's interest.

21.   All parties whose interests are adverse and antagonistic are before this Honorable Court by proper process.

22.     Plaintiff seek relief in order to enforce contractual and legal rights, not to merely seek legal advice from this Honorable Court.

WHEREFORE, Plaintiff, THE PALMS OF PEMBROKE CONDOMINIUM ASSOCIATION, INC., request this Court take jurisdiction of the parties above, the subject matter herein, and grant Plaintiff the following relief:

a)     a declaratory judgment finding whether coverage limits are $5,000,000.00 or $33,260,204.00 under the GLENCOE policy;

b)     in the event of a declaratory judgment finding that coverage limits are $5,000,000.00 under the GLENCOE policy, a declaratory judgment finding that coverage for damages in excess of this amount exists under the WESTCHESTER policy;

c)     an award of all benefits due under all applicable policies for the damage sustained pursuant to the subject claim;

d)     interest and costs;

e)     attorney's fees pursuant to Fla. Stat. § 627.428;

f)     such other relief that this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury of all issues so triable as of right by jury.

Dated this ___6th___ day of September, 2013.

5

Law Offices of
Gonzalez & Associates, P.A.
Attorneys for Plaintiff
3600 Red Road
Suite 603
Miramar, Florida 33025
Tel. (954) 538-1304
Email 1: mg@gonzalezlegal.com
Email 2: cathy@gonzalezlegal.com

By: _____
    Mariano R. Gonzalez, Esq.
    Florida Bar No. 983063

6

EXHIBIT "A"



# GENERAL ENDORSEMENT

ENDORSEMENT NO:

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD-10602-00 | July 26, 2005 | GREC Conversion XVIII dba Palms of Pembroke | American E & S |

It is hereby understood and agreed that building values on the Named Windstorm Insurance Policy shall be increased by $5,022,260 (revised TIV $33,260,204) for Additional Premium of $20,704.

All other terms and conditions remain the same.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:     September 13, 2005                    BY
                                        AUTHORIZED REPRESENTATIVE

Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8-20 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengrp.com

5024.1 Jul 96

Wording Review Form

Review Date:

| Policy Name: | GREC Conversions XVIII | | Policy Ref: | WD 10692-00 |
|---|---|---|---|---|
| | | | Broker: | AES |

| Peril: | Wind | |
|---|---|---|
| Property Covered: (delete as nec) | Buildings - Business Income | |

| Limits: | $5m Primary | | TIV | Premium |
|---|---|---|---|---|
| Policy Period: | July 15 2005 -2006 | | $20,237,944 | $120,000 |

| Deductibles: | 5% per loc   50,000 min | per loc. |
|---|---|---|

Co-Insurance
90%

| Standard Glencoe Endorsements | Issue | Included in Underlying Policy |
|---|---|---|
| Service of Suit | | |
| Min Premium | | |
| Cyber Clause | | |
| Terrorism exclusion | 1 | |
| Occurrence Limit of Liability | | |
| Mold Exclusion | | |
| Pollution Exclusion | | |
| Specified Product Exclusion -EIFS/Dryvi | 3 | |
| Pre-existing Damage Exclusion | 4 | |
| Schedule of Locations | | |
| OR LOCATION ADDRESS | 351 PalmCircle , Pembroke Pines FL 33026 | |

| Other Endorsements | | |
|---|---|---|
| Cancellation (   # of days) | | |
| Condo Assn Form | | |
| Condo Assn Form Endorsement | | |
| Building Ordinance Endmt | | |
| Mortgagee Endorsement | | |
| Causes of Loss EQ form | | |
| Below Grade Property Exclusion | | |
| Peril Change | 2 | |

Comments

NAMED WIND STORM POLICY                    APTS usually bought and then sold
                                          for conversion to condos

End 1-4

ND END 5 — TO CHANGE PREM + TIV.

REVIEW INSP. REPORT ATTACHED

Terror Offered - Accept  /  NTU   (circle one)

Policy Number: WD-10692-00

**Glencoe Group**

Glencoe Insurance Ltd.
Part of the Glencoe Group
Renaissance House, East Broadway
P.O. Box HM 2527
Hamilton HMGX, Bermuda
Tel: 441-296-3235  Fax 441-295-4029

## COMMON POLICY DECLARATIONS

| | |
|---|---|
| Named Insured and Mailing Address:<br>GREC Conversion XVIII dba Palms of Pembroke<br>14128 SW 93 Lane | Producer Name and Address:<br>American E & S<br>40 Fulton Street |
| Miami FL 33186<br>USA | New York NY 10038<br>USA |

*(handwritten: END 7 Palms of Pembroke Pine)*

Policy Period    From: Jul 15, 2005   To: July 15, 2006    Term: 12 months
12:01 AM; Standard time
at your mailing address

This policy consists of the following coverage per the attached form. This premium may be subject to adjustment.

| | |
|---|---|
| Limit of Liability: | $5,000,000  Primary per occurrence |
| Perils Insured: | Wind |
| Property Covered: | Building, Business Income |
| Total Insured Value: | $28,237,944 |
| Covered Locations(s): | 351 Palm Circle, Pembroke Pines, FL 33026. |
| Valuation: | Replacement Cost if actually replaced, otherwise Actual Cash Value |
| Coinsurance: | 90% NIL END 7 |
| Deductibles: | Wind:  5% of Total Insurable Values, per location, per occurrence,<br>$50,000 minimum each occurrence |

TOTAL ADVANCE PREMIUM (not including applicable taxes)          $120,000

Form(s) and Endorsement(s) made a part of this policy at time of issue;  Glencoe Named Storm Insurance Policy;
Glencoe Insurance Endorsements Nos 1-5; Condominium Association Coverage Form CP 00 17 04 02

Countersigned:

Date: _____September 1, 2005_____   By: _____
                                                     (Authorized Representative)

THIS COMMON POLICY DECLARATIONS PAGE IS ATTACHED TO AND FORMS A PART OF THE POLICY ISSUED TO THE ABOVE
NAMED INSURED, AND IS SUBJECT TO THE TERMS, LIMITATIONS, EXCEPTIONS AND CONDITIONS OF SUCH POLICY.

50002 May 97



## TERRORISM EXCLUSION ENDORSEMENT

ENDORSEMENT NO. 1

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD-10692-00 | Jul 15, 2005 12:01AM | GREC Conversion XVIII dba Palms of Pembroke | American E & S |

Any other provision of this policy notwithstanding, this insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly resulting from, occasioned by, happening through or arising out of or in any way related to:

(a) Terrorism, meaning the use or threatened use of any violence or force (including acts of sabotage, or the manufacture or other creation, direct or indirect release of germs, disease or other contagions or contaminants) by any person or persons for religious, political, personal or financial ends, whether or not such person or persons are acting in concert with or on behalf of any organization or government (de facto or de jure). "Terrorism" includes, but is not limited to, any use or threatened use of violence, force or physical harm by any means that frightens, intimidates or instills fear in the public at large or any members of the public; or

(b) Any actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, combating, defending or retaliating against any act or acts of "terrorism".

This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in sequence to the loss, injury, damage, expense, cost, or legal obligation.

In any action, arbitration or proceeding where the Insurer alleges that by reason of this clause any loss, damage, injury, expense, cost or legal obligation is not covered by this Insurance the burden of proving that such loss, damage, injury, expense, cost or legal obligation is covered shall be upon the Insured.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:     September 1, 2005          BY _____
                                              AUTHORIZED REPRESENTATIVE

Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8-20 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengtp.com

H:\AGUS\GUS_SQL_Server\Forms\BND-01-TERR.DOC



# GENERAL ENDORSEMENT

ENDORSEMENT NO:   2

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD-10692-00 | July 16, 2005 | GREC Conversion XVIII dba Palms of Pembroke | American E & S |

It is hereby understood and agreed that the Named Windstorm Insurance Policy shall be amended to cover the peril WIND ONLY.

All other terms and conditions remain the same.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:      September 1, 2005

BY
AUTHORIZED REPRESENTATIVE

Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8-20 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengrp.com

5024.1 Jul 96



## SPECIFIED PRODUCT EXCLUSION

ENDORSEMENT NO. 3

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD-10602-00 | Jul 16, 2005 | GREC Conversion XVIII dba Palms of Pembroke | American E & S |

It is agreed that the Glencoe Named Storm Insurance Policy is hereby amended as follows:

This Policy does not cover loss or damage caused directly or indirectly arising out of the design, manufacture, sale, distribution or use of the following product:.

Exterior Insulation and Finish System (EIFS)

All other terms and conditions remain unchanged.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:September 1, 2005          BY _____          _____
                                                          AUTHORIZED REPRESENTATIVE

Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8420 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengrp.com

5021.1 Jul96



## PRE-EXISTING DAMAGE EXCLUSION ENDORSEMENT

ENDORSEMENT NO. 4

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD-10692-00 | Jul 15, 2005 | GREC Conversion XVIII dba Palms of Pembroke | American E & S |

It is hereby understood and agreed that this policy does not cover any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing building damage at the time of the loss, including any loss from the 2004 hurricane season.

This Exclusion shall automatically be removed upon the completion of exterior building repairs which fully enclose the building.

Completion of the building enclosure repairs shall be evidenced by:
1) a signed letter from the licensed General Contractor stating such repairs are completed and,
2) a copy of a Certificate of Insurance from the General Contractor confirming General Liability coverage with a minimum limit of $1,000,000. This Certificate of Insurance shall be on file with the agent.

All other terms and conditions remain unchanged.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:     September 1, 2005     BY _____

AUTHORIZED REPRESENTATIVE

Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8-20 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengrp.com

5021.1 Jul 96



## General Endorsement

ENDORSEMENT NO:     5

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD 10692-00 | July 15, 2005 | Greo Conversion XVIII dba Palms of Pembroke | American E&S |

It is hereby understood and agreed that the ISO Condominium Association Form CP 00 17 04 02 attaching to and forming part of this policy shall have the following item removed its entirety:

A.   Coverage
   (a) Building,
      (6)  Any of the following types of property contained within a unit, regardless of ownership, If your Condominium Association Agreement requires you to insure it:
         (a)  Fixtures, improvements and alterations that are a part of the building or structure; and
         (b)  Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.
      But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph A.1.a.(6) above.

All other terms and conditions shall remain the same.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:     September 1, 2005

BY
AUTHORIZED REPRESENTATIVE

Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8-20 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengrp.com

5024.1 Jul 96

Policy No: WD-10692-00

# NAMED STORM INSURANCE POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

**NOTICE:** The premium payable under this policy does not include any amount with respect to any insurance premium tax, franchise tax or excise tax. It shall be the sole obligation of you or your representative to pay any and all of such taxes that are applicable to this policy, in addition to the premium, and we shall have no obligation whatsoever to pay any such taxes. We shall be entitled to full indemnification from you for all amounts incurred by us (including any and all costs, including our attorneys' fees) in the event any governmental authority shall seek payment from us, or our agents of any such tax.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to Glencoe Insurance Limited, the Company providing this insurance.

Other words and phrases that are not otherwise defined in this policy appear in quotation marks and have a specific meaning. Refer to SECTION F DEFINITIONS for the definition of such terms.

## SECTION A. PROPERTY INSURANCE

1. SCOPE OF INSURANCE

   a. Subject to the limits set forth in the Declarations and the provisions of this policy, we will pay for physical loss of or damage to covered property, as defined below, at the "Covered Location(s)" if and to the extent such physical loss or damage is caused directly by a "Named Storm" that occurs during the policy period (herein referred to as an "Occurrence"). We will only pay for such direct physical loss or damage that actually takes place during the 72 hour period following the commencement of the Occurrence.

   b. For the purposes of this policy, a Named Storm that affects more than one Covered Location shall be deemed a single Occurrence. Our limit of liability in respect of such Named Storm shall be limited to our limit for a single Occurrence, irrespective of the number of Covered Locations listed in the Declarations. We will not pay for any physical loss of or damage to Covered Property if such physical loss or damage is not visible immediately following the 72 hour period. Physical loss or damage that takes more than the 72 hour period to become apparent, or to have an immediate, noticeable effect, without the use of any equipment or device, is not covered by this policy.

   c. For the purposes of determining the amount of our liability under this policy, an Occurrence that affects more than one Covered Location shall be deemed a single Occurrence. Our limit of liability in respect of such Occurrence shall be limited to our limit for a single Occurrence, irrespective of the number of Covered Locations that are damaged by the Occurrence.

   d. Each Named Storm shall constitute a single Occurrence hereunder. The Company shall not be liable for any loss caused by any Named Storm occurring before the effective date and time of this policy, nor for any loss occurring after the expiration date of this policy as a result of any Named Storm occurring prior to the expiration date.

1

e. The most we will pay under this policy for loss or damage caused by any one Occurrence is the per Occurrence Limit of Insurance stated in the Declarations. This policy shall be excess of any underlying limits of insurance or underlying primary or excess policies stated in the declarations.

f. The most we will pay under this policy for loss or damage at any Covered Location is the Limit of Insurance shown in the Declarations, as amended by the most recent "Statement of Values" on file with us, for such Covered Location. We will not pay for loss or damage until the amount of loss or damage exceeds the Deductible(s) shown in the Declarations page. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

g. This Policy only applies to Covered Locations identified in the Schedule of Locations attached to the Declarations, as may be amended from time to time by an endorsement to this policy. There is no automatic coverage under this policy for locations you acquire after commencement of the policy period. There will be no coverage for such locations unless agreed to in writing by us in an endorsement attached to this policy, and subject also to your payment in full of the applicable additional premium, as determined by us. We shall have no obligation to accept such additional locations, and we may decline to insure them for any reason or for no reason.

h. We will have no liability under this policy unless you pay, when due, all premiums required under this policy.

2. PROPERTY COVERED BY THIS POLICY

Except to the extent described in Section 2, Property Not Covered by This Policy, this policy provides insurance coverage for the following types of property while at Covered Locations, but only if and to the extent a Limit of Insurance is shown in the Declarations:

a. Your building(s), meaning the building(s) or structure(s) at Covered Locations, including:

   (1) Completed additions;
   (2) Permanently installed machinery, and equipment;
   (3) Fixtures, including outdoor fixtures;
   (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:
      (a) Fire extinguishing equipment;
      (b) Floor coverings; and
      (c) Appliances used for refrigerating, ventilating, cooking, dish washing or laundering.
   (5) If not covered by any other insurance:
      (a) Additions under construction, alterations and repairs to the building or structure;
      (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building structure.

b. Your Business Personal Property located while in or at the Covered Locations, or in the open (or in a vehicle) within 100 feet of a Covered Location. Business Personal Property means the following types of property unless otherwise specified in the Declarations:

Policy No: WD-10692-00

(1) Furniture and Fixtures;
(2) Machinery and equipment;
(3) "Stock";
(4) All other personal property owned by you and used in your business;
(5) The value of your "Tenant's Improvements and Betterments";
(6) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

3. PROPERTY NOT COVERED BY THIS POLICY

Notwithstanding any provision in this policy to the contrary, the following are not insured under this policy against any peril or loss:

a. Accounts, bills, currency, deeds, evidences of debt, money, notes or securities;
b. Animals, unless owned by others and boarded by you, or if owned by you, only as "Stock" while inside of buildings;
c. Automobiles held for sale;
d. Bridges, roadways, walks, patios or other paved surfaces;
e. Contraband, or property in the course of illegal transportation or trade;
f. The cost of excavations, grading, backfilling or filling;
g. Property below ground other than basements, including but not limited to the cost of excavation, grading or filling; foundations of buildings, machinery, boilers or engines the foundations of which are below the undersurface of the lowest basement floor, or where there is no basement, below the surface of the ground; pilings, pipes, and drains which are underground, pilings which are below the low water mark; outdoor swimming pools; fences; beach or diving platforms or appurtenances; piers, wharves and docks; retaining walls not constituting a part of a building, and outdoor signs not attached to a building;
h. Land (including land on which the property is located), water, growing crops or lawns;
i. Personal property while airborne or waterborne;
j. Pilings, piers, wharves or docks;
k. Property that is covered under any other policy issued by us or by any other insurer (irrespective of whether you can collect on it), except to the extent the amount of the loss exceeds the limits of coverage of such other coverage, in which event covered property under this policy will include such property up to the amount of such excess, subject to the other terms and conditions of this policy;
l. The information contained in valuable papers and records, including those which exist on electronic or magnetic media;
m. Electronic data processing equipment or electronic data, or the functionality thereof. This exclusion applies, but is not limited, to computers, computer systems, networks, electronic accounting machines, and all supporting machinery, magnetic tapes, discs, cards, electronic storage devices, and all software and data, including procedures, programs and source material of any kind;
n. Vehicles or self-propelled machines (including aircraft or watercraft) that:
   (1) Are licensed for use on public roads; or
   (2) Are operated principally away from the described premises.
o. Outdoor fences, radio or television antennas (including satellite dishes), including their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants;

3

p. Property you have sold after it has been delivered to you.   This includes property sold under conditional sales, trust agreements, installment payment plans or other deferred payment plans;

q. Property in transit;

r. Steam boilers, steam pipes, steam turbines, or steam engines owned or operated by you if their bursting, rupture, or explosion causes loss or damage;

s. Machines or machinery of loss or damage by rupturing, bursting or disintegrating or rotating or moving parts;

t. Contractors' equipment;

u. Jewelry, watches, pearls, precious and semi-precious stones, gold silver, platinum, other precious metals or alloys, bullion, furs and articles trimmed with fur;

v. Fine arts, meaning paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" furniture, "antique" jewelry, bric-a-brac, porcelains, and similar property or rarity, historical values, or artistic merit;

w. Property in course of construction, including construction materials or supplies;

x. Power transmission and/or feeder lines not on the insured premises;

y. Land, including land on which the property is located, land values, growing crops or lawns, or the cost of excavations, grading or filling;

z. Underground or surface water;

aa. Exported or imported property that is covered under any ocean marine cargo insurance policy or any similar policy that anyone has obtained covering exports and imports.

bb. Property owned by any person or entity other than you, including such property in your care, custody, or control at the time of an Occurrence.

4. <u>BUILDING AND PERSONAL PROPERTY COVERAGE EXTENSIONS</u>

Except as otherwise provided in this policy, including the exclusions set forth in Section D, Exclusions, the following Coverage Extensions apply to this policy. Where indicated Coverage Extensions require and are subject to the payment of an additional premium.

a. <u>Debris Removal</u>

We will pay your reasonable expense to remove debris of Covered Property following an Occurrence. The expenses will be paid only if they are reported to us in writing within 60 days of the date of the Occurrence. The most we will pay under this Coverage Extension is 25% of the sum of:

(1) The amount we pay for the direct physical loss of or damage to the Covered Property; plus

(2) The deductible in this policy applicable to that loss or damage.

(3) This Coverage Extension does not apply to costs to
        ;
    (a) Extract 'pollutants' from land or water; or

    (b) Remove, restore or replace polluted land or water; or

    (c) Any other environmental clean-up or related costs or Environmental remediation Costs.

b. <u>Preservation of Property</u>

In the event you move Covered Property from a Covered Location to another location solely for the purpose of reducing loss or damage from an approaching Named Storm that has been forecast as

4

Policy No: WD-10692-00

imminent by the U.S. National Weather Service, we will pay for loss or damage to such Covered Property that is caused by the Named Storm while in transit to or at the other location.

c. Valuable Papers and Records - Cost of Research

Upon payment of an additional premium, you may extend the insurance that applies to your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, and for which duplicates do not exist. The most we will pay under this Coverage Extension is $1,000 per Covered Location.

d. Appurtenant Buildings and Structures

Upon payment of an additional premium, you may extend the insurance that applies to the Building(s) and to Business Personal Property to cover direct loss or damage to buildings or structures other than those at the Covered Locations if such buildings or structures are within 100 feet of the Covered Location(s) and are used in connection with the purposes for which the buildings and structures at the Covered Locations are used. The most we will pay under this Coverage Extension is an amount equal to 5% of the limit of insurance for the Building(s) and an amount equal to 5% of the limit of liability for Business Personal Property shown in the Declarations, but in no event more than $5,000 in respect of each additional building or structure

e. Demolition and Increased Cost of Construction

Upon payment of an additional premium, you may extend the insurance that applies to the Building(s) and to Business Personal Property to cover:
   (1) loss occasioned by the enforcement of any federal, state or municipal law or ordinance regulating the construction or repair of buildings or structures in effect at the time the Occurrence, which necessitates rebuilding the demolished portion of the insured Building(s) which have not previously suffered damage; however, we will not pay for any increased cost of construction loss unless the damaged Building(s) are actually rebuilt or replaced;
   (2) the full cost of rebuilding both the damaged and demolished portions of such Building(s) with materials and in a manner to fully satisfy such ordinance or law;
   (3) subject to the provisions of Section B of this policy, any increase in the Business Income and Extra Expense loss arising out of the additional time required to comply with such law or ordinance; and
   (4) the cost of demolishing the undamaged property including the cost of clearing the site. This Coverage Extension excludes:
      (a) demolition or increased cost of repair or reconstruction, debris removal or loss of use caused by the enforcement of any law or ordinance regulating Asbestos,
      (b) any governmental direction or request declaring that Asbestos present in or part of or utilized on any undamaged portion of insured property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

If you purchase the Demolition and Increased Cost of Construction Coverage Extension, Exclusion 1.a in Section D of this policy will not be applicable..

Policy No: WD-10692-00

5. LOSS PAYMENT — ACTUAL CASH VALUE

Subject to the applicable Limits of Insurance and also subject to any coinsurance percentage stated in the Declarations, the amount we will pay for direct physical loss or damage to covered property caused by an Occurrence is limited to its Actual Cash Value, defined as the amount which it would cost to repair or replace damaged property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence, at the time of the Occurrence, subject to the following:

a. In the event of loss or damage to covered property, at our option, we will either:
   (1) Pay the Actual Cash Value of lost or damaged covered property;
   (2) Pay the cost of repairing or replacing the lost or damaged covered property;
   (3) Take all or any part of the covered property at an agreed or appraised value; or
   (4) Repair, rebuild or replace the covered property with other property of like kind and quality.

b. We will give you notice of our intentions within 30 days after we receive your sworn statement in proof of loss.

c. We will not pay you more than your financial interest in the covered property.

d. We shall have no liability to defend you against any claims or suits arising from claims of owners of any property.

e. We will pay for covered loss or damage within 30 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy; and
   (1) We have reached agreement with you on the amount of loss; or
   (2) An appraisal award has been made.

f. In the event we elect to pay the cost of repairing or replacing the lost or damaged covered property we will pay such amount within 60 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy; and
   (1) We have reached agreement with you on the amount of loss; or
   (2) An appraisal award has been made.

g. In the event we elect to take all or any part of the covered property at an agreed or appraised value, we will do so within 60 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy.

h. In the event we elect to repair, rebuild or replace the covered property with other property of like kind and quality, we will commence such repair, rebuilding, or replacement within 90 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy.

i. We will determine the amount of Actual Cash Value of covered property in the event of loss or damage as follows:

6

Policy No: WD-10692-00

(1) At Actual Cash Value as of the time of loss or damage, except as provided in (2) through (5) below.

(2) "Stock" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had.

(3) Glass at the cost of replacement with safety glazing material if required by law.

(4) Tenant's Improvements and Betterments at:
  (a) Actual Cash Value of the lost or damaged property if you make repairs promptly.
  (b) A proportion of your original cost if you do not make repairs within thirty (30) days of the loss. We will determine the proportionate value as follows:
    (i)   Multiply the original cost to you by the number of days from the loss or damage to the expiration of your lease; and
    (ii)  Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease. If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.
  (c) Nothing if others pay for repairs or replacement.

(5) Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:
  (a) Blank materials for reproducing the records; and
  (b) Labor to transcribe or copy the records when there is a duplicate.

6. OPTIONAL COVERAGE - REPLACEMENT COST

If shown in the Declarations, this Optional Coverage - Replacement Cost replaces section 4 above, and applies separately to each item of covered property, subject to any Coinsurance percentage stated in the Declarations.

a. Subject to the applicable Limits of Insurance and also subject to any coinsurance percentage stated in the Declarations, the amount we will pay the cost of repairing or replacing the lost or damaged covered property with other property of like kind and quality.

b. We will not pay you more than your financial interest in the covered property.

c. We shall have no liability to defend you against any claims or suits arising from claims of owners of any property.

d. We will commence such repair, rebuilding, or replacement within 90 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy.

e. This Optional Coverage does not apply to:
  (1) Contents of a residence;
  (2) Manuscripts;
  (3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Such property will be valued at Actual Cash Value at the time of loss.

7

Policy No: WD-10692-00

f. You may make a claim for loss or damage covered by this insurance on an Actual Cash Value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an Actual Cash Value basis, you may still make a claim for replacement cost if you notify us of your intent to do so within 180 days after the Occurrence.

g. We will not pay on a replacement cost basis for any loss or damage:
(1) Until the lost or damaged property is actually repaired or replaced; and
(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

h. We will not pay more for loss or damage on a replacement cost basis than the lesser of:
(1) The Limit of Insurance applicable to the lost or damaged property;
(2) The stated value for the Covered Location involved in the loss as stated in the most recent "Statement of Values" on file with us;
(3) The cost to replace, on the same premises, the lost or damaged property with other property:
(a) Of comparable material and quality; and
(b) Used for the same purpose; or
(4) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

i. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair or any property.

j. For any building constructed prior to 1950, replacement cost will be determined based upon the estimated cost to repair or replace a building having a similar purpose to such building that was constructed during the sixty months immediately preceding the date of the Occurrence.

## SECTION B. BUSINESS INCOME AND EXTRA EXPENSE

1. SCOPE OF INSURANCE

a. If a Limit of Insurance for Business Income and Extra Expense is included in the Declarations, we will pay for the actual loss of Business Income you sustain, in excess of the deductible stated in the Declarations, due to the necessary suspension of your "operations" during the "period of restoration;" however, the suspension must be caused by direct physical loss of or damage to your covered property as described in Section A, caused directly by or resulting directly from an Occurrence.

b. We will not pay for such loss sustained during the first seven days following the Occurrence, and loss of Business Income during such seven day period will not be applied against the Business Income deductible stated in the Declarations. We will only pay for loss of Business Income sustained by you in excess of the deductible stated in the Declarations during the twelve consecutive months immediately following the end of the first seven days following the Occurrence.

8

Policy No: WD-10692-00

2. BUSINESS INCOME

Business Income means:
a. The Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred but for an Occurrence; plus
b. Your continuing normal operating expenses actually incurred, including payroll, during the "period of restoration", and
c. Includes "Rental Value".

3. BUSINESS INCOME COVERAGE EXTENSIONS

a. Extra Expense

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred but for an Occurrence.

(2) Except as set forth below, where used in this policy, the term Extra Expense means reasonable expenses incurred solely to avoid or minimize the suspension of your business and to continue your "operations:"

(a) At the Covered Locations; or
(b) If necessary, at replacement premises or at temporary locations, including:

(i)   Relocation expenses;
(ii)  Costs to equip (except equipment that is covered property under SECTION A - BUILDING AND PERSONAL PROPERTY) and operate the replacement or temporary locations, during the "period of restoration"; or
(iii) To otherwise minimize your loss of Business Income if you cannot continue your "operations" at the Covered Location(s).

(3) We will not pay as extra expense any amount you incur to replace any property if the property replaced is covered property under Section A.

(4) Extra Expense also does not include any amount incurred to construct, build out, decorate, or furnish replacement premises.

b. Civil Authority

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the Covered Location(s) due to direct physical loss of or damage to property:

(1) Other than at the Covered Location(s), and
(2) Located within 500 yards of the Covered Location(s),

that is directly caused by or resulting from an Occurrence. This coverage will apply for a period of up to two consecutive weeks from the date of the Occurrence.

c. Extended Business Income

We will pay for the actual loss of Business Income, including "Rental Value", you incur during the period that:

9

Policy No: WD-10692-00

(1) Begins on the date all covered property is actually repaired, rebuilt or replaced and "operations" are resumed or tenantability is restored; and
(2) Ends on the earlier of:
    (a) The date you could restore your "operations" or tenant occupancy with reasonable speed, to the condition that would have existed but for the Occurrence, or
    (b) 180 consecutive days after the date determined in (1) above.

## 4. BUSINESS INCOME LOSS AND EXTRA EXPENSE NOT COVERED BY THIS POLICY

a. We will not pay any amount you incur to replace any property if the property replaced is covered property under Section A.

b. Extra Expense also does not include any amount incurred to construct, build out, decorate, or furnish replacement premises.

c. We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

(1) Sixty (60) consecutive days from the date of direct physical loss or damage; or
(2) The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the Covered Locations due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

    (a) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;
    (b) Data stored on such media; or
    (c) Programing records used for electronic data processing or electronically controlled equipment.

Example A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 - September 1. Loss during the period September 2 - October 1 is not covered.

## 5. LOSS PAYMENT - BUSINESS INCOME AND EXTRA EXPENSE

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of your business before the direct physical loss or damage occurred;
(2) The reasonably likely Net Income of your business if no loss or damage occurred;
(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed immediately prior to the Occurrence; and
(4) Other relevant sources of information, including:
    (a) Your financial records and accounting procedures;

10

Policy No: WD-10692-00

    (b) Bills, invoices and other vouchers; and
    (c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on all expenses that exceed the normal operating expense that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

    (1) The salvage value that remains of any property bought for temporary use during the "period or restoration" once "operations" are resumed; and

    (2) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    (3) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. We will reduce the amount of your:

    (1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or "Stock") at the Covered Locations or elsewhere.

    (2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

If you do not resume "operations", or you do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## SECTION C. COINSURANCE

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

1. Buildings and Personal Property

We will not pay the full amount of any loss if the value of covered property at the time of loss multiplied by the Coinsurance percentage stated in the Declarations is greater than the Limit of Insurance for the covered property stated in the Declarations. Instead, we will determine the most we will pay using the following steps:

a. Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;
b. Divide the Limit of Insurance of the Covered Property by the amount determined in step a;
c. Multiply the total amount of loss, before the application of any deductible, by the amount determined in step b; and
d. Subtract the deductible from the amount determined in step c.

We will pay the amount determined in step d, or the Limit of Insurance, whichever is less.

2. Business Income

a. We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than the Coinsurance percentage shown for Business Income in the Declarations; multiplied by the sum of:

11

Policy No: WD-10692-00

(1) The Net Income (Net Profit or Loss before income taxes), and
(2) All operating expenses, including payroll expenses, that would have been incurred (had there been no Occurrence) by your "operations" at the described premises for the 12 months immediately prior to the Occurrence.

b. Instead, we will determine the most we will pay using the following steps:
(1) Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;
(2) Divide the Limit of Insurance for the described premises by the amount determined in step (1); and
(3) Multiply the total amount of loss by the amount determined in step (2).

We will pay the amount determined in step (3), or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself

c. This condition applies to all covered loss except Extra Expense Additional Coverage, including any coverage provided on a replacement cost basis.

## SECTION D. EXCLUSIONS

1. This policy does not cover loss or damage caused directly or indirectly by any of the following:

a. Ordinance or Law, meaning the enforcement of any ordinance or law:
(1) Regulating the construction, use or repair of any property; or
(2) Requiring the tearing down of any property, including the cost of removing its debris.

b. Earth Movement, meaning any earth movement, such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting, unless caused directly by an Earthquake.

c. Governmental Action, meaning seizure or destruction of any property by order of any governmental authority for any reason.

d. Nuclear Hazard, meaning any nuclear reaction or radiation or radioactive contamination.

e. Biological agents or chemical agents.

f. Failure, impairment or malfunction, for any reason, of any:
(1) Computer, or
(2) Electronic data processing equipment, or
(3) Computer or telephone system or network, including any servers, or
(4) Electronic accounting machine, or
(5) Means of electronic mail communications ("e mail"), or
(6) Means of access to the internet, including any interruption of service from an internet service provider.

g. Any computer virus or other source of computer failure, impairment or malfunction.

12

Policy No: WD-10692-00

h. Power Failure, meaning any failure of power or other utility service supplied to the Covered Locations, if the failure occurs away from the described premises.

i. Water, meaning:
   (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
   (2) Mudslide or mudflow;
   (3) Water that backs up from a sewer or drain; or
   (4) Water under the ground surface pressing on, or flowing or seeping through:
       (a) Foundations, walls, floors whether paved or not;
       (b) Or Basements, whether paved or not; or
       (c) Doors, windows or other openings.

j. Riot or Civil Commotion, including any looting.

k. Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.

l. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.

m. Sprinkler Leakage, meaning leakage or discharge of any substance from any "Automatic Sprinkler System."

n. Dry rot, condensation, dampness, spoilage, decay, fungus, mold or mildew.

o. Any "Pollution Condition."

p. Any lead paint or lead paint products.

q. "Asbestos".

r. Hidden or latent defect or quality in covered property.

s. Contingent or Secondary Business Interruption, meaning loss that you suffer as a direct or partial result of physical loss or damage to property owned by persons or entities other than you.

   By way of illustration, and not in limitation of the foregoing, if your Covered Location is located in New York and an Occurrence takes place in California, which causes physical loss or damage to property of others located in California, for example, a supplier of parts for products you manufacture, you will not be covered under this policy for any loss that you suffer as a result of such Occurrence.

2. We also will not pay for any loss or damage caused by or resulting from:

   a. Artificially generated electrical current, including electric arcing that disturbs electrical devices, appliances or wires.

13

Policy No: WD-10692-00

b. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

c. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":
   (1) At or from any premises, site or location; or
   (2) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible.

d. Any loss, cost or expense arising out of any:
   (1) Request, demand or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "Pollutants";
   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "Pollutants"; or
   (3) Any other "Environmental Remediation Costs."

## SECTION E. COMMON POLICY CONDITIONS

1. ABANDONMENT

   a. There can be no abandonment of any property to us.

2. APPRAISAL

   a. If you and we disagree on the values of the covered property, your Business Income, Extra Expense or the amount of any loss or damage, either may make written demand for an appraisal of such values. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Business Income, Extra Expense and amount of loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
   (1) Pay its chosen appraiser; and
   (2) Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim on the basis that it is not covered under the policy. No other disputes between you and us will be subject to this provision.

3. CANCELLATION

   a. You may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   b. We may cancel this policy for any reason by mailing or delivering to you written notice of cancellation at least 30 days, 10 days if our reason for cancellation is your non-payment of any premium when due, before the effective date of cancellation. We will mail or deliver our notice to your last mailing address known to us.

14

Policy No: WD-10692-00

c. Notice of cancellation by you or us will state the effective date of cancellation. The policy period will end on that date.

d. If this policy is cancelled, or the exposure is adjusted, we will send the first Named Insured any premium refund due, subject to the following provision: Cancellation, or exposure adjustment, of any account which has had coverage for any day(s) during the period June 1 through December 1 (the wind season) will subject the policyholder to a 100% minimum earned premium assessment. Cancellation, or exposure adjustment, of any account which has not had coverage for any day(s) during the period June 1 through December 1 (the wind season) will result in the application of a short rate assessment, subject to a minimum 25% earned premium.

e. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

5. CONCEALMENT, MISREPRESENTATION OR FRAUD

a. This policy is void in any case of fraud by you at any time including fraud in any claim presented hereunder. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
   (1) This Policy;
   (2) The covered property or any Covered Location;
   (3) Your interest in the covered property; or
   (4) A claim under this policy.

6. DUTIES OF THE NAMED INSURED IN THE EVENT OF LOSS OR DAMAGE

You must see that the following are done in the event of loss or damage to covered property:

a. Notify the police if a law may have been broken.

b. Give us prompt notice of the loss or damage, including a description of the covered property involved.

c. As soon as possible, give us a description of how, when and where the loss or damage occurred.

d. Take all reasonable steps to protect the covered property from further damage.

e. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

f. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

g. Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

h. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed

15

Policy No: WD-10692-00

i. Send us a signed, sworn statement in proof of loss containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.

j. Cooperate with us in the investigation or settlement of the claim.

k. Resume all or part of your "operations" as quickly as possible.

### 7. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### 8. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions are safe or healthful; or comply with laws, regulations, codes or standards.

### 9. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage. We may allocate such loss or damage to any of such coverages at our option and in our sole discretion.

### 10. KNOWLEDGE OR CONTROL

We will not pay for loss or damage while the chance of loss or damage is increased by any means within your knowledge or control.

### 11. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this policy unless:

a. There has been full compliance with all of the terms of this policy; and

b. The action is brought within one (1) year after the Occurrence that is the subject of a claim.

### 12. MORTGAGE HOLDERS

Payments in respect of loss covered under Section A of this policy shall be to each mortgage holder shown in the Declarations in their order of precedence, as their interests may appear. A mortgage holder shall have the right to receive loss payment even if the mortgage holder has started foreclosure or

16

Policy No: WD-10692-00

similar action on the building or structure. At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us. If we cancel this policy, we will give written notice to the mortgage holder at least 5 days before the effective date of cancellation. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 5 days before the expiration date of this policy. The term "mortgage holder" includes a trustee.

## 13. NO BENEFIT TO BAILEE

Except as expressly set forth herein, no person or organization, other than you, having custody of covered property will benefit from this insurance.

## 14. OTHER INSURANCE

You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this policy. If you do, we will only pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this policy bears to the Limits of Insurance of all policies covering the loss on the same basis. If there is other insurance covering the same loss or damage, other than that described above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, irrespective of whether you can collect on it, but we will not pay more than our applicable Limit of Insurance.

## 15. PREMIUMS AND STATEMENT OF VALUES

You:

a. Are responsible for the payment of all premiums;
b. Will be the payee for any return premiums we pay;
c. Are responsible for providing to us a revised "Statement of Values" for all Covered Locations if you wish to add an additional Covered Location, and otherwise in the event the value of one or more Covered Locations changes during the policy period.
d. May at your option provide us with a revised "Statement of Values" at more frequent intervals, but not more than monthly, prior to a loss.

Upon our receipt of any revised "Statement of Values" we shall recalculate your premium and adjust it pro rata for the remainder of the policy period. IN THE EVENT OF A LOSS, OUR LIABILITY WILL BE CALCULATED BASED UPON THE MOST RECENT "STATEMENT OF VALUES" ON FILE WITH US. We shall have the right at any time to perform our own appraisal of the value of a Covered Property, and to adjust your premium and amend the "Statement of Values" if an amendment is warranted.

## 16. RECOVERED PROPERTY

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to our Limit of Insurance.

17

Policy No: WD-10692-00

17. SERVICE OF SUIT CLAUSE

a. In the event of our failure to pay any amount claimed by you to be due under this policy, we will submit at your request to the jurisdiction of any United States Federal District Court of competent jurisdiction within the United States. It is further agreed that service of process in such lawsuit may be made upon LeBoeuf, Lamb, Greene and MacRae, One Embarcadero Center, San Francisco, CA 94111, U.S.A., with a copy sent by facsimile to us.

b. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence a lawsuit against you in any such court. We and you will comply with the final decision of such court, or the applicable United States Court of Appeals, or the United States Supreme Court, in the event of an appeal, in any lawsuit commenced by you or us solely to enforce the terms of this policy.

c. The above named are authorized and directed to accept service of process on our behalf in any such lawsuit and/or are authorized and directed upon your request, to give you a written undertaking that they will enter a general appearance upon our behalf in the event such a lawsuit shall be instituted by you.

d. Further, pursuant to any statute of any state, territory or district of the United States which makes a provision, we will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in such statute (the "Insurance Commissioner"), or their successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on your behalf arising out of this policy, and we designate the above named as the persons to whom the Insurance Commissioner is authorized to mail such process or a true copy thereof.

18. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

19. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. Notwithstanding the foregoing, you may waive your rights against another party in writing:

a. Prior to a loss to your covered property.
b. After a loss to your covered property only if, at time of loss, that party is one of the following:
   (1) Someone insured by this policy;
   (2) A business organization owned or controlled by you;
   (3) That owns or controls you; or
   (4) Your tenant.

18

Policy No: WD-10692-00

20. VACANCY

We will not pay for any loss or damage if a building where loss or damage occurs has been "Vacant" or "Unoccupied" for more than 60 consecutive days before that loss or damage irrespective of whether such Vacancy or Unoccupancy begins before the inception of this policy. Buildings under construction are not considered "Vacant" or "Unoccupied."

## SECTION F. DEFINITIONS

Where used in this policy the following terms shall have the meanings described in this Section F.

a. "Asbestos" means asbestos and includes any asbestos products, asbestos fibers, asbestos dust, and any other substance containing asbestos.

b. "Automatic Sprinkler System" means:

    (1) Any automatic fire protective or extinguishing system, including connected:
        (a) Sprinklers and discharge nozzles;
        (b) Ducts, pipes, valves and fittings;
        (c) Tanks, their component parts and supports; and
        (d) Pumps and private fire protection mains.

    (2) When supplied from an automatic fire protective system:
        (a) Non-automatic fire protective systems; and
        (b) Hydrants, standpipes and outlets.

c. "Covered Location(s)" shall mean the premises listed in the Declarations page of this policy, as may be amended from time to time by an endorsement to this policy.

d. "Environmental Remediation Costs" means any costs arising from or in connection with Pollutants, including but not limited to:

    (1) The costs of testing for, sampling, investigation, remedial design, feasibility studies and the remediation and monitoring of contamination of land, soil, debris, surface water, groundwater, or sediment, and including costs for engineering, water supply replacement, monitoring air quality, community relations, site management, costs attendant to business interruption during remediation, and costs incurred in connection with compliance with financial responsibility requirements, such as premiums for surety bonds, and permitting and licensing costs;
    (2) Damages claimed by any person or entity;
    (3) Attorneys' and experts' fees, expenses, and court costs for responding to, investigating, defending against, and/or negotiating a settlement, of any claim;
    (4) Costs actually paid to the government of either the United States, Canada, or any state or province thereof, or any political subdivision thereof, for which you are liable, including government oversight costs;
    (5) Damages for diminution in value of real property including the cost of appraising such property;
    (6) Natural resource damages;

19

Policy No: WD-10692-00

(7) Judgments, fines and penalties, including awards of attorneys' and experts' fees and costs of responding to claims for equitable relief.

e. "Finished Stock" means "Stock" you have manufactured. "Finished Stock" also includes whiskey and alcoholic products being aged. "Finished stock" does not include "Stock" you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

f. "Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the U.S. National Weather Service, and designated as such by the prefix "Hurricane" and followed by a name.

g. "Named Storm" means:
(1) a storm that is identified and named as a tropical storm or "Hurricane" by the U.S. National Weather Service; and
(2) that s identified as a tropical storm or "Hurricane" at the time of landfall in the "State"" in which the your Covered Locations are located.

h. "Operations" means your business activities occurring at the Covered Location(s) and the tenantability of the covered Location(s), if coverage for Business Income including "Rental Value" applies.

i. "Period of Restoration" means the period of time that:

(1) Begins with the commencement of the Occurrence; and
(2) Ends on the earlier of:
(a) The date when the covered property at the Covered Locations should be repaired, rebuilt or replaced with reasonable speed and similar quality; and
(b) the end of twelve consecutive months immediately following the Occurrence.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or
(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants."

The expiration date of this policy will not terminate the "period of restoration."

j. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, hazardous material, or hazardous substance, including smoke, vapor, soot, dust, fumes, metals, wastewater, debris, acids, alkalis, chemicals and "Waste". "Waste" includes materials to be recycled, reconditioned or reclaimed, and includes petroleum products.

k. "Pollution Condition" means the presence of Pollutants in, at, on, or under land, soil, or groundwater, sediments, or any watercourse or body of water.

20

Policy No: WD-10692-00

l.  "Rental Value" means:

    (1)  Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

    (2)  the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

    (3)  Fair rental value of any portion of the Covered Location(s) which is occupied by you.

m. "State" means any state of the United States of America and includes the District of Columbia and Puerto Rico.

n. "Statement of Values" means the schedule of total insurable values for each Covered Location insured under this policy based upon Actual Cash Value or replacement cost, as applicable, and on file with us.

o. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

p. "Tenant's Improvements and Betterments" are fixtures, alterations, installations or additions:

    (1)  Fixed to and made a part of a building located at Covered Locations, that you occupy as a tenant; and

    (2)  that you acquired or made directly at your expense but cannot legally remove without the landlord or owner's consent.

q. "Unoccupied" means containing contents pertaining to the occupancy of the building while operations or other customary activities are suspended.

r. "Vacant" means containing no contents pertaining to operations or activities customary to occupancy of the building.

GLENCOE INSURANCE LTD.

By: _____
    Authorized representative

21

COMMERCIAL PROPERTY
CP 00 17 04 02

Policy No: WD-10692-00

# CONDOMINIUM ASSOCIATION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section H. – Definitions.

A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. Building, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, outside of individual units, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure; and

(6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

(a) Fixtures, improvements and alterations that are a part of the building or structure; and

(b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph A.1.a.(6) above.

b. Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

(1) Personal property owned by you or owned indivisibly by all unit-owners;

(2) Your interest in the labor, materials or services furnished or arranged by you on personal property of others;

(3) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

But Your Business Personal Property does not include personal property owned only by a unit-owner.

c. **Personal Property Of Others** that is:

   (1) In your care, custody or control; and

   (2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

   However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

   Covered Property does not include:

   a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

   b. Animals, unless owned by others and boarded by you;

   c. Automobiles held for sale;

   d. Bridges, roadways, walks, patios or other paved surfaces;

   e. Contraband, or property in the course of illegal transportation or trade;

   f. The cost of excavations, grading, back filling or filling;

   g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

      (1) The lowest basement floor; or

      (2) The surface of the ground if there is no basement.

   h. Land (including land on which the property is located), water, growing crops or lawns;

   i. Personal property while airborne or waterborne;

   j. Bulkheads, pilings, piers, wharves or docks;

   k. Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

   l. Retaining walls that are not part of a building;

   m. Underground pipes, flues or drains;

   n. Electronic data, except as provided under Additional Coverages — Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

   o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

   p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

      (1) Are licensed for use on public roads; or

      (2) Are operated principally away from the described premises.

      This paragraph does not apply to:

      (a) Vehicles or self-propelled machines or autos you manufacture or warehouse;

      (b) Vehicles or self-propelled machines, other than autos, you hold for sale;

      (c) Rowboats or canoes out of water at the described premises; or

      (d) Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

   q. The following property while outside of buildings:

      (1) Grain, hay, straw or other crops; or

© ISO Properties, Inc., 2001

CP 00 17 04 02

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs, or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

3. **Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) **Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | | $ 90,000 |
| Amount of Deductible | | $ 500 |
| Amount of Loss | | $ 80,000 |
| Amount of Loss Payable | | $ 79,500 |
| | | ($80,000 – $500) |
| Debris Removal Expense | | $ 30,000 |
| Debris Removal Expense Payable | | |
| | Basic Amount | $ 10,500 |
| | Additional Amount | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

     © ISO Properties, Inc., 2001     CP 00 17 04 02     □

(5) Under this Additional Coverage, we will not pay for:

    (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

    (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

    (a) We will not pay for the Increased Cost of Construction:

        (i) Until the property is actually repaired or replaced, at the same or another premises; and

        (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the same premises.

    (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in e.(6) of this Additional Coverage, is not subject to such limitation.

f. Electronic Data

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

    (a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

    (b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage -- Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage -- Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

5. Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a. Newly Acquired Or Constructed Property

(1) Buildings

You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) Your Business Personal Property

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(iii) Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

© ISO Properties, Inc., 2001

CP 00 17 04 02

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(3) If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

(4) Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-Premises**

(1) You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

(a) Temporarily at a location you do not own, lease or operate;

(b) In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

(c) At any fair, trade show or exhibition,

(2) This Extension does not apply to property:

    (a) In or on a vehicle; or

    (b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

e. **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

f. **Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

B. **Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

C. **Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

D. **Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

© ISO Properties, Inc., 2001

CP 00 17 04 02

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance -- Bldg. 1: | $ | 60,000 |
| Limit of Insurance -- Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

| | |
|---|---|
| $ | 60,100 |
| -- | 250 |
| $ | 59,850 Loss Payable – Bldg. 1 |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139,850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Loss to Bldg. 1: | $70,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss to Bldg. 2: | $90,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Bldg. 1: | $60,000 |
| (Limit of Insurance) | |
| Loss Payable -- Bldg. 2: | $80,000 |
| (Limit of Insurance) | |

Total amount of loss payable: $140,000

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

5. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. **Unit-Owner's Insurance**

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance.

7. **Vacancy**

a. Description Of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

© ISO Properties, Inc., 2001

CP 00 17 04 02

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

　　(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

　　(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

　　(a) Vandalism;

　　(b) Sprinkler leakage, unless you have protected the system against freezing;

　　(c) Building glass breakage;

　　(d) Water damage;

　　(e) Theft; or

　　(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

8. **Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in b., c. and d. below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. Glass at the cost of replacement with safety glazing material if required by law.

9. **Waiver Of Rights Of Recovery**

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

F. **Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

When:
| | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 100,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

Step (1): $250,000 x 80% = $200,000 (the minimum amount of Insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

When:
| | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 200,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

The minimum amount of Insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate Items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

When:
| | | |
|---|---|---|
| The value of property is: | | |
| Bldg. at Location No. 1 | $ | 75,000 |
| Bldg. at Location No. 2 | $ | 100,000 |
| Personal Property at Location No. 2 | $ | 75,000 |
| | $ | 250,000 |
| The Coinsurance percentage for it is | | 90% |

| | | |
|---|---|---|
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $ | 180,000 |
| The Deductible is | $ | 1,000 |
| The amount of loss is: | | |
| Bldg. at Location No. 2 | $ | 30,000 |
| Personal Property at Location No. 2 | $ | 20,000 |
| | $ | 50,000 |

Step (1): $250,000 x 90% = $225,000 (the minimum amount of Insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000

Step (4): $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

2. **Mortgageholders**

   a. The term mortgageholder includes trustee.

   b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

   c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

      All of the terms of this Coverage Part will then apply directly to the mortgageholder.

   e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

© ISO Properties, Inc., 2001

CP 00 17 04 02   □

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Example:

| If: | The applicable Limit of Insurance is | $ 100,000 |
|---|---|---|
| | The annual percentage increase is | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | 146 |
| | The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

### 3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence; or

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit owners, and the property covered under Paragraph A.1.a.(6) of this Coverage Form, are not considered to be the personal property of others.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

4. Extension Of Replacement Cost To Personal Property Of Others

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph 3.b.(1) of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

H. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   © ISO Properties, Inc., 2001   CP 00 17 04 02



## POLICY BINDER

BINDER NO.  10692

| | |
|---|---|
| DATE: | July 15, 2005 |
| PRODUCER: | American E & S |
| NAME INSURED: | GREC Conversion XVIII dba Palms of Pembroke |
| COMPANY: | GLENCOE INSURANCE LTD. |
| ASSIGNED POLICY NO.: | WD-10692-00 |
| POLICY TERM: | Jul 15, 2005 to Jul 15, 2006 12:01am Standard Time |
| PROPERTY COVERED: | Building and Business Income |
| PERILS INSURED: | Wind |
| LIMITS OF LIABILITY: | $5,000,000 Primary per occurrence |
| DEDUCTIBLE(S): | Wind:   5% of Total Insurable Values, per location, per occurrence<br>$50,000 minimum each occurrence |
| LOCATIONS & VALUES: | 351 Palm Circle, Pembroke Pines, FL 33025 |
| TIV: | $26,237,944 |
| VALUATION: | Replacement Cost |
| CO-INSURANCE: | NIL — *$16.90? per original binder* |
| PREMIUM: | $120,000 |
| INSPECTION FEE: | $250 |
| TRIA MANDATORY OFFER: | Rejected by Insured |
| REMARKS: | Cyber Clause applies to this Policy Binder.<br>Terrorism exclusion applies to this Binder.<br>Occurrence Limit of Liability Endorsement applies to this Binder.<br>Mold Exclusion applies to this Binder.<br>Pollution Exclusion applies to this Binder.<br>Specified Product Exclusion (EIFS/Dryit construction) applies to this Binder.<br>Pre-existing Damage Exclusion applies to this Binder.<br>10 day notice of cancellation applies if premium is not received within 30 days.<br>Binder is net of all taxes, fees & boards; Broker responsible for payment of FET.<br>Cancellation, or exposure adjustment, of any account which has had coverage for any<br>day(s) during the period June 1 through December 1 (the wind season) will subject the<br>policyholder to a 100% minimum earned premium assessment. Cancellation, or<br>exposure adjustment, of any account which has not had coverage for any day(s) during<br>the period June 1 through December 1 (the wind season) will result in the application of<br>a short rate assessment, subject to a minimum 25% earned premium.<br>Note: This coverage will not respond to Hurricane Emily or any other Named<br>Storms at the time of binding. |

Please review the above binder carefully as it may not provide coverages or terms you requested. Insurance, when
effected shall be subject to all terms and conditions of the policy(ies) which will be issued; and in the event of any
inconsistency herewith; the terms and provisions of such policy(ies) shall prevail.

*[signature]*

5100.1  Jul 96



**Glencoe Group**

## POLICY BINDER

BINDER NO. 10692

| | |
|---|---|
| DATE: | July 15, 2005 |
| PRODUCER: | American E & S |
| NAME INSURED: | GREC Conversion XVIII dba Palms of Pembroke |
| COMPANY: | GLENCOE INSURANCE LTD. |
| ASSIGNED POLICY NO.: | WD-10692-00 |
| POLICY TERM: | Jul 15, 2005 to Jul 15, 2006 12:01am Standard Time |
| PROPERTY COVERED: | Building and Business Income |
| PERILS INSURED: | Wind |
| LIMITS OF LIABILITY: | $5,000,000 Primary per occurrence |
| DEDUCTIBLE(S): | Wind:  $(5% of Total Insurable Values, per location, per occurrence<br>$50,000 minimum each occurrence |
| LOCATIONS & VALUES: | 351 Palm Circle, Pembroke Pines, FL 33025 |
| TIV: | $28,237,944 |
| VALUATION: | Replacement Cost |
| CO-INSURANCE: | 90% NTI |
| PREMIUM: | $120,000 |
| INSPECTION FEE: | $250 |
| TRIA MANDATORY OFFER: | Rejected by Insured |
| REMARKS: | Cyber Clause applies to this Policy Binder.<br>Terrorism exclusion applies to this Binder.<br>Occurrence Limit of Liability Endorsement applies to this Binder.<br>Mold Exclusion applies to this Binder.<br>Pollution Exclusion applies to this Binder.<br>Specified Product Exclusion (EIFS/Dryvit construction) applies to this Binder.<br>Pre-existing Damage Exclusion applies to this Binder.<br>10 day notice of cancellation applies if premium is not received within 30 days,<br>Binder is net of all taxes, fees & boards; Broker responsible for payment of FET.<br>Cancellation, or exposure adjustment, of any account which has had coverage for any day(s) during the period June 1 through December 1 (the wind season) will subject the policyholder to a 100% minimum earned premium assessment. Cancellation, or exposure adjustment, of any account which has not had coverage for any day(s) during the period June 1 through December 1 (the wind season) will result in the application of a short rate assessment, subject to a minimum 25% earned premium.<br>Note: This coverage will not respond to Hurricane Emily or any other Named Storms at the time of binding. |

Please review the above binder carefully as it may not provide coverages or terms you requested.  Insurance, when effected shall be subject to all terms and conditions of the policy(ies) which will be issued, and in the event of any inconsistency herewith; the terms and provisions of such policy(ies) shall prevail.

*Margret B. Astu*



# GENERAL ENDORSEMENT

ENDORSEMENT NO:      6

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD-10892-00 | July 26, 2005 | GREC Conversion XVIII dba Palms of Pembroke | American E & S |

It is hereby understood and agreed that building values on the Named Windstorm Insurance Policy shall be increased by $5,022,260 (revised TIV $33,260,204) for Additional Premium of $20,704.

All other terms and conditions remain the same.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:      September 13, 2005                    BY _____
                                                AUTHORIZED REPRESENTATIVE

Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8-20 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengrp.com

5024.1 Jul 96



# GENERAL ENDORSEMENT

ENDORSEMENT NO:   7

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| WD-10692-00 | various | Palms of Pembroke Pines | American E & S |

It is hereby understood and agreed that the following changes shall apply to the policy:

1.  Effective November 28, 2005 the Named Insured and the mailing address shall be amended to:

    The Palms of Pembroke Pines
    c/o GRS Management
    7900 NW 155 Street,  No 205
    Miami Lakes
    FL 33016

2.  Effective inception the Declaration Page shall be amended to show Nil Coinsurance.


All other terms and conditions remain the same.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

DATED:      December 14, 2005                          BY _____
                                                       AUTHORIZED REPRESENTATIVE



Glencoe Insurance Ltd.

*A member of the Glencoe Group of Companies*
Renaissance House, 8-20 East Broadway, Pembroke HM 19, Bermuda
Phone: 441-296-3235  Fax: 441-295-4029  www.glengrp.com

5024.1 Jul 98

EXHIBIT "B"

## ASSIGNMENT

THIS ASSIGNMENT (the "Assignment") is made and entered into as of this _____ day of August, 2010, by and between GREC Conversions XVIII, Ltd., a Florida Limited Partnership (the "Assignor") and a The Palms of Pembroke Condominium Association, Inc., a Florida Non Profit Corporation (the "Assignee").

## RECITALS

WHEREAS, Assignor is desirous of assigning all of its right, title, and interest in that certain Insurance Contract with Glencoe Insurance, Policy Number WD-10692-00, providing coverage from the period starting on July 15, 2005 and July 15, 2006 (the "Policy") attached hereto as Exhibit A relating to or issued in connection with the real property located at 351 Palm Cricle, Pembroke Pines, Florida 33025 (the "Property"), and all of its rights as the owner of the Property under the Policy, in favor of Assignee, and Assignee is desirous of succeeding to all of Assignor's right, title and interest under and with respect to the Permit; and

WHEREAS, Assignor is desirous of assigning all of its right, title, and interest in that Policy relating to or issued in connection with the Property, and all of its rights as the owner of the Property under Policy, in favor of Assignee, and Assignee is desirous of succeeding to all of Assignor's right, title and interest under and with respect to the Policy.

NOW THEREFORE, in consideration of the mutual promises herein made, the sum of Ten Dollars ($10.00), and other good and valuable consideration, the receipt, adequacy and sufficiency whereof are hereby conclusively acknowledged, the parties hereto agree as follows:

1.     The foregoing recitals are true and correct and are incorporated herein by this reference.

2.     Assignor hereby expressly assigns, transfers and sets over unto Assignee all of Assignor's right, title and interest in, under and to the Policy.

3. .     Assignee hereby assumes all obligations of Assignor under the Policy and specifically agrees to be bound by all of the terms and conditions of the Policy.

4.     Assignee each hereby agrees to indemnify and hold the Assignor harmless against and from all claims, demands, causes of action, judgments, losses, damages, costs or expenses, including attorneys' fees and liabilities which may be asserted or recovered in connection with the Policy.

5.     The parties acknowledge and agree that this Assignment may be executed in multiple counterparts, and transmitted via telecopy, each such counterpart (whether transmitted

Assignor         Assignee

Page 1

via telecopy or otherwise), when executed, shall constitute an integral part of the one and the same agreement between the parties.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals, the date first above written.

ASSIGNOR:                                    ASSIGNEE:

GREC Conversions XVIII, Ltd., a Florida       The Palms of Pembroke Condominium
Limited Partnership                           Association, Inc., a Florida Non Profit
                                              Corporation

By:_____                  By: _____
Title:_____                 Title:_____

Assignor        Assignee

Page 2

EXHIBIT "C"



**GAB Robins**
A Leader in Global Risk Management Services

PO Box 1088
Hendersonville, NC
28793-1088
T : 828-696-2483
F : 866-583-8976

September 8, 2008

CERTIFIED MAIL

Elite Claims Consultants
Mannie Gonzalez
6625 Miami Lakes Dr
Suite #377
Miami Lakes, FL 33014

Dear Mr. Gonzalez,

RE :   **GAB File No.** :23158-00473
      **Insured** : GREC CONVERSIONS XVIII PALMS OF PEMBROKE
      **Policy#** : WD10692
      **Ins Company** : GLENCOE INSURANCE LTD
      **Date of Loss** :10/24/2005

Please be advised that GAB Robins North America, Inc. has been retained by Glencoe Insurance Ltd to assist with the investigation and handling of the reported Wind damage claim due to Hurricane Wilma on October 24th, 2005. It is our understanding, that you are the designated representative for GREC Conversions XVIII dba Palms of Pembroke concerning this claim.

**SUMMARY OF CLAIM HISTORY**

We were in receipt of the initial loss report and attempted to make telephone contact on 11/16 and 11/18/2005. A contact letter was sent via mail on 11/24/2005. Our initial contact was with Public Adjuster Joseph Zevuloni on 1/11/2006. A copy of the Public Adjuster Contract was received by our office on 1/13/2006 a copy of which is attached. Our initial inspection with Mr. Zevuloni's son took place on 1/11/2006. Our initial inspection did not reveal any damage in excess of the applicable deductibles. We requested that Mr. Zevuloni present his claim and attempted multiple follow up calls with Mr. Zevuloni to secure it. Due to lack of interest, we closed our file on a no payment basis on 03/20/2006.

On 8/10 and 8/20/2007, we discussed reopening this loss and that you were in the process of securing a contract with Palms of Pembroke. It is our understanding that this did not take place till at least 10/5/2007. During our telephone calls, a copy of your contract was requested and to date has not been received. As a courtesy, this file was reopened and we set up a re-inspection for 10/26/2007.

(Copyright (C) 2000 GAB Robins North America, Inc., All Rights Reserved)
Version 2.0

Prior to the re-inspection, a cc.   ...previous GAB Robins Reports were review... and it came to our attention, that a previous Public Adjuster was involved with this file and a copy of the Zevuloni contract was provided to you at the re-inspection on 10/26/2007. In addition, a copy of the Glencoe policy was provided and it was brought to your attention that the Named Insured at the time of Hurricane Wilma was GREC Conversions XVIII dba Palms of Pembroke. Our review of the Articles of Incorporation registered with the Florida Department of State, Division of Corporations reveled that The Palms of Pemborke Condominium Association was formed on 12/2/2005, after Hurricane Wilma. We discussed that any potential check issued in the future would have to include both the original Public Adjuster's name as well as the name as listed on the policy of GREC Conversions XVIII dba Palms of Pembroke.

## INSURANCE POLICY

Glencoe Insurance Ltd provides coverage to GREC Conversions XVIII dba Palms of Pembroke under policy number WD-10692-00 from July 15, 2005 to July 15, 2007. This policy is for the peril of Wind only and is subject to a Limit of Liability of $5,000,000.00 Primary per occurrence. Covered Property is Building and Business Income on a Replacement Cost if actually replaced, otherwise Actual Cash Value Valuation. A 5% of Total Insurable Values, per location, per occurrence, $50,000.00 minimum each occurrence deductible applies.

Coverage forms consist of Glencoe Named Strom Insurance Policy; Glencoe Insurance Endorsements 1 to 7 and Condominium Association Coverage Form CP 00 17 04 02.

The Total Insured Value at the inception of the policy was $28,237,944.00. This was later increased to $33,260,204.00 with General Endorsement No. 6 with an Endorsement Effective date of July 26, 2005. General Endorsement No. 7 changed the name of the Insured from GREC Conversions XVIII dba Palms of Pembroke to The Palms of Pembroke Pines effective November 28, 2005.

The initial Property Proposal and Binder are attached along with the Schedule of Values submitted to Glencoe Insurance. This schedule reflects a Building Limit, Business Income Limit and a Total Insurable Value per building. The 5% Deductible applies to the Total Insurable Value for each listed Building.

## DEDUCTIBLE APPLICATION

As indicated above, the initial policy reflected Total Insurable Values of $28,237,944.00. The amount was later increased to $33,260,204.00 with General Endorsement No. 6 with an Endorsement Effective date of July 26, 2005. The original schedule listed 32 buildings with a swimming pool, tennis court and clubhouse. During our re-inspection on 10/26/2007 it was discovered that only 31 buildings exist. The Declaration of Condominium documents and site survey included therein was reviewed as well as aerial photos and the schedule of values submitted initially and with the increased Values with General Endorsement No. 7.

Attached please find Schedule of Values Worksheets that reflect the Original and Changed Values as well as an explanation of how one building was listed twice on the schedules. The values for that location have been combined resulting in the Condo Building Schedule of Values with the 5% deductible calculation per building. If you do not understand the calculations, please advise.

## NAMED INSURED

As we have previously discussed, the Named Insured at the time of Hurricane Wilma is GREC Conversions XVIII dba Palms of Pembroke. As such, any formal claim presentation will need to indicate such as The Palms of Pembroke Pines name change was not effective until November 28, 2005 per General Endorsement No. 7. If as you have indicated that an assignment of interest exists, please provide us with a copy to review. At this time, any potential claim payments or claim documents to be executed, would need to reflect GREC Conversions XVIII dba Palms of Pembroke as the Named Insured.

(Copyright (C) 2000 GAB Robins North America, Inc., All Rights Reserved)

Version 2.0

**PUBLIC ADJUSTER REPRESENTATION**

Currently, a copy of your representation agreement has not been provided for our verification as has been previously requested. Please confirm whose interests you represent and provide us a copy of your agreement.

In addition, a pre-existing agreement is in existence with Zevuloni & Associates. As such, it appears that Zevuloni & Associates has a financial interest if any payments are made. If this agreement has been terminated, then please provide a copy of such documentation.

**RE-INSPECTION**

A re-inspection was performed on 10/26/2007 and a follow up inspection was performed of the clubhouse roof. We have since completed our evaluation of this claim and at this time do not see how any damages associated by the direct action of wind from Hurricane Wilma will exceed the applicable deductible on a building by building basis. Therefore, no claim payments can be recommended.

In order for any payments to be issued, damages in excess of the deductibles will need to be presented. Our evaluation of the roofs indicates scattered shingle damage to the roofs and as such would not exceed the applicable deductible per building. We have previously requested emergency repair documentation and an itemization of any interior damage and none has been presented.

**PROOF OF LOSS**

If you are not in agreement with our assessment of the Hurricane Wilma damage, then Glencoe Insurance Ltd is formally requesting your presentation of a claim along with the completion of the attached Proof of Loss within 60 days of receipt of this request. If after 60 days we do not receive an executed Proof of Loss then we will conclude that you are in agreement with our assessment of this claim and we will once again retire our file to a closed status on a no payment basis.

Please refer to Pages 9 & 10 of Condominium Association Coverage Form CP 00 17 04 02:

**3. Duties In The Event Of Loss Or Damage**

    a. You must see that the following are done in the event of loss or damage to Covered Property:

        (1) Notify the police if a law may have been broken.

        (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

        (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

        (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

        (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

        (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

        Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(Copyright (C) 2000 GAB Robins North America, Inc., All Rights Reserved)

Version 2.0

cc      GREC Pembroke Management, Inc.
        Jose L Machado
        8500 SW 8th Street, Suite #228
        Miami, FL 33144

        The Palms of Pembroke Pines
        c/o GRS Management
        7900 NW 155 Street, No 205
        Miami Lakes, FL 33016

        The Palms of Pembroke Condominium Assn., Inc.
        Clayton Powell
        250 Palm Circle West
        Pembroke Pines, FL 33025

Version 2.0

(Copyright (C) 2000 GAB Robins North America, Inc., All Rights Reserved)